HALL v. PREFERRED ACC. INS. CO. OF NEW YORK et al.

No. 14219.

United States Court of Appeals Fifth Circuit.

June 12, 1953.

845

John I. Kelley, Atlanta, Ga., G. Fred Kelley, Gainesville, Ga., Frank Grizzard, Atlanta, Ga., for appellant.

Ben J. Camp, Paul Webb, Jr., Atlanta, Ga., for appellees.

Before HOLMES, BORAH, and RUSSELL, Circuit Judges.

BORAH, Circuit Judge.

This is an appeal from a judgment in favor of the appellee insurance company in a suit predicated on its alleged negligence and bad faith in failing and refusing to set-

tle an action for wrongful death brought against appellant, the insured, by Mrs. John W. Cassell.

Appellant, C. M. Hall, doing business as Hall Motors, satisfied a judgment for $8,000.00 with interest which Mrs. Cassell obtained[1] against him by reason of the negligent act of appellant's employee in the operation of an automobile owned by appellant. Thereupon, appellant commenced this action in the Superior Court of Fulton County, Georgia, claiming that the Cassell action could have been settled before trial for $5,000.00 and seeking to recover judgment over against appellee for the full amount expended in satisfaction of the state court judgment including interest, less the amount of $5,390.09 paid by appellee after trial. This latter sum represented the maximum extent of appellee's liability under a policy of automobile liability insurance which it had issued to appellant and which was in force at the time of the accident. The action was thereafter removed to the United States District Court for the Northern District of Georgia, where it was tried by the court without a jury on the pleadings and an agreed statement of facts and a judgment was rendered in favor of appellee. Appealing from this judgment appellant assigns numerous errors but the paramount and controlling issue for our determination is whether the District Court was right in concluding that the failure to make a settlement could not be attributed to any negligence or bad faith on the part of the insurance company.

By the terms of the policy, the appellee insurance company was required to pay on behalf of the insured all sums which the insured should become obligated to pay by reason of the liability imposed upon him by law for damages, including death at any time resulting therefrom, sustained by any person or persons, caused by accident. The company was also obliged to defend in the insured's name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof. It was further stipulated in the policy contract that the insurance com-

1. Hall v. Cassell, 79 Ga.App. 7, 9, 52 S.E. 2d 639.

pany reserved the right to make such investigation, negotiation and settlement of any claim or suit as might be deemed expedient by the company and the insured was required to cooperate with the company and "upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits."

Upon receiving notice of the Cassell accident, appellee initiated an investigation which included an inquiry as to the employment status of Jesse T. Garmon, who, on the occasion in question, was driving the automobile from the Hall Motors sales lot to his home. On December 9, 1947, three days after the accident, appellee obtained a signed statement from appellant in which he declared that Garmon was an automobile salesman employed on a straight commission basis. This commission varied with each car sold according to the profit made on the sale. The statement further recited that appellant in accordance with his usual business practice had entered a newspaper advertisement in which he listed the automobile in question for sale giving Garmon's home telephone number and that he had told Garmon to take the car to his home and attempt to sell it over the week end, but that there were no special arrangements concerning Garmon's use of the car and as far as appellant knew Garmon had no prospective purchaser in mind.

No further significant development occurred in the Cassell case until February 3, 1948, when Mrs. Cassell and her attorney made an unsolicited written offer to appellant to settle the action for $5,000.00. This offer which was conditioned to expire at the end of thirty days, was transmitted by appellant's attorneys to the insurance company in an accompanying letter which in pertinent part stated: "We have succeeded in obtaining an offer of settlement from Mrs. John W. Cassell and her attorney, Mr. Houston White, for the sum of $5,000.-00, including costs, * * *." The insurer refused to accept this offer of settle-

ment and in a written reply stated that the letters conclusively established that the appellant and his attorneys, who also represented the antagonistic interests of Garmon, had been negotiating with the plaintiff for a settlement in violation of the express terms and provisions of the policy contract. Appellee further stated that after it had taken over the defense of the case in good faith and had referred the matter to its attorneys appellant had violated the provisions of the contract and was now being placed on notice that in continuing with the defense of the action appellee was doing so under a full reservation of its rights. There was no response to this letter. In this connection it should be mentioned that during the time when the offer of settlement was outstanding, the insurance company informed appellant that if the latter insisted on settling the case for $5,000.00, the insurer would pay one-half of that sum if the assured would contribute a like amount, and this appellant was unwilling to do.

There were no new developments until March 26, 1948, when the plaintiff in the Cassell case, pursuant to notice, took the depositions of appellant and Garmon, both of whom testified in the presence of appellee's attorney to facts which were substantially the same as those set forth in appellant's prior written statement. In addition, appellant testified that he had surrendered complete possession of the car to Garmon and that in appellant's absence Garmon was authorized to exercise his own judgment and discretion with respect to the price for which the car should be sold including the amount of the trade-in allowance in the event a purchaser wished to trade in his car. Thereafter, counsel for the insurer concluded and advised his principal that under the facts as set forth in appellant's written statement and in the depositions it affirmatively appeared that Garmon was not an employee of appellant but an independent contractor under applicable Georgia law.[2] And, on the basis

---

2. Under Georgia law, "Where the owner of an automobile delivers it to A for the purpose of being sold by A to any purchaser whom A may procure, and the entire control of the car is surrendered to A, A is not the servant of the owner,

of the information in hand, that there was about a five to one chance of being successful in the defense of the Cassell suit. The underwriter adhered to its decision to defend the suit and in due course the cause came on for trial.

Approximately twelve days prior to the day fixed for trial, plaintiff served appellant with notice to produce and have on hand at the trial his records, cancelled checks, employment contracts and social security and withholding tax returns showing all salary or commissions paid to Jesse T. Garmon during the calendar year 1947. Upon examining the records prior to trial, the insurer's attorney discovered to his surprise that Garmon was not a commission salesman, but a salaried employee, who had been paid exactly $49.50 per week throughout the year 1947. Garmon, when questioned, admitted that he worked on a straight salary and was paid such salary regardless of whether he sold any cars or not. Following this disclosure a conference was had between appellant and appellee's attorney. At this meeting appellant was asked to explain the material discrepancies between the information shown by his records and his prior statement as confirmed in the depositions which he and Garmon gave. Whereupon, appellant became angry and informed counsel that the manner in which Garmon was paid and the amount of his salary was none of the insurer's business and that he had nothing further to say with respect to the case. Appellee thereupon again notified appellant that it was willing to continue with the defense of the suit under a full reservation of its rights and insisted that appellant co-operate in the defense of the cause by making a full disclosure of his arrangement and transactions with Garmon.

Under these circumstances the cause came on for trial and judgment was entered on the jury verdict in favor of plaintiff. In reviewing this judgment the Georgia Court of Appeals declared that the jury was fully instructed as to the contention that Garmon was not the agent or servant of appellant but an independent contractor; and that having been properly instructed the question was one for the jury and the evidence was sufficient to support the verdict that Garmon was the agent of appellant.

■ This being the record, we are to determine whether the appellee insurer was justified in concluding that it had a standing to contend against the liability of appellant. There can be no doubt that the weight of authority supports the view that an insurer must act with good faith toward its insured in the defense and settlement of claims which under its policy it has the exclusive right to defend and settle, and is liable in damages to the assured for failure to do so. Home Indemnity Co. v. Williamson, 5 Cir., 183 F.2d 572; Maryland Casualty Co. v. Elmira Coal Co., 8 Cir., 69 F.2d 616; Noshey v. American Automobile Ins. Co., 6 Cir., 68 F.2d 808; American Mutual Liability Ins. Co. v. Cooper, 5 Cir., 61 F.2d 446. And, contrary to the better reasoned cases, it has been held in some jurisdictions that recovery may be had for negligence of the insurer in refusing to settle a claim for damages against the insured. Ballard v. Ocean Accident & Guarantee Co., 7 Cir., 86 F.2d 449; Attleboro

but an independent contractor." Simril v. Davis, 42 Ga.App. 277, 155 S.E. 790; see also McIntyre v. J. M. Harrison & Co., 62 Ga.App. 211, 8 S.E.2d 580; Stenger v. Mitchell, 70 Ga.App. 563, 28 S.E.2d 885.

In the McIntyre case, McIntyre was an automobile salesman who worked on commission and was permitted to have a car at night to sell to any customer he was able to procure. On the night of his death, he was driving a company owned automobile and after trying to sell it to a prospect was en route either to his home or to call on another prospect when he was killed at a railroad cross-ing. The Georgia Court of Appeals ruled as a matter of law that McIntyre was an independent contractor at the time of his accident.

In the Stenger case, an automobile salesman who worked on commission was furnished a car by his employer as an accommodation and courtesy, and after completing his day's work was driving home in said vehicle when he struck the plaintiff. The court ruled that he was not on any mission for defendants, his employers, and that as a matter of law his employers were not liable.

Mfg. Co. v. Frankfort Marine, etc., Ins. Co., 1 Cir., 240 F. 573. Under the applicable law of Georgia, as declared by its highest court and which is here controlling, a defense going far enough to show reasonable and probable cause for making it will vindicate the good faith of the insurance company as effectively as will a complete defense to the action. Travelers' Ins. Co. v. Sheppard, 85 Ga. 751, 12 S.E. 18; Cotton States Life Insurance Company v. Edwards, 74 Ga. 220; Life & Casualty Ins. Co. of Tennessee v. Freemon, 80 Ga.App. 443, 444, 56 S.E.2d 303; Liberty Mutual Insurance Co. v. Atlantic Coast Line R. Co., 66 Ga.App. 826, 19 S.E.2d 377; North British & Mercantile Ins. Co. v. Parnell, 53 Ga.App. 178, 185 S.E. 122.

We agree with the District Court that the Georgia cases [3] relied upon by appellee in the Cassell suit rule in effect that Garmon would be an independent contractor as to appellant under the facts recited in appellant's statement. And such was in effect the holding in McIntyre v. J. M. Harrison & Co., 62 Ga.App. 241, 8 S.E.2d 580, 581, wherein the court said: " 'An automobile salesman working on commission and not subject to the owner's control as to details of the sale of a car will ordinarily be deemed an independent contractor in determining the owner's liability for his negligent driving' ". There is no merit in appellant's argument that his written statement afforded no reasonable basis for the defense that Garmon was an independent contractor. The mere fact that this defense was unsuccessful in the state court action does not establish the fact that it was not made in good faith. Indeed, we think that the Georgia decisions which we have cited so hold.

■ The insurer was entitled to the complete truth concerning the circumstances surrounding the accident. Appellant's argument that appellee was negligent in failing to interview Garmon during the pendency of the offer ignores his own obligation and overlooks the fact that there was no necessity for interviewing Garmon as to his employment status had appellant been telling the truth. In Buffalo v. United States Fidelity & Guaranty Co., 10 Cir., 84 F.2d 883, 885, it was held that an insurance company is entitled to an honest statement by the insured, lacking which the company is deprived of the opportunity either to negotiate a settlement or to defend upon solid ground. To the same effect are Home Indemnity Co. of New York v. Standard Accident Ins. Co., 9 Cir., 167 F.2d 919; Williams v. Employers Mut. Liability Ins. Co., 5 Cir., 131 F.2d 601 and State Farm Mut. Automobile Ins. Co. v. Bonacci, 8 Cir., 111 F.2d 412. Here, appellant embarrassed and crippled the insurer not only by initially deceiving appellee upon a vital question of fact, but by misleading appellee as to the circumstances surrounding the offer of settlement and by a last minute failure to cooperate. All of which rendered difficult any efforts which the insurer might have made or might have desired to make toward a settlement of the case. Accordingly, and in the light of the foregoing we hold that there is no sufficient showing here of either negligence or bad faith on the part of appellee to justify a recovery against it. The judgment is

Affirmed.